IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| CRISTELL WHITFIELD, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION FILE NO. |
| | ) | 1:24-cv-2981-TWT-LTW |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| TURNER SERVICES, INC., | ) | |
| | ) | |
| WARNER MEDIA, LLC, | ) | |
| | ) | |
| RALPH BEIDELMAN, as the | ) | |
| Administrator for the Warner | ) | |
| Media, LLC U.S. Severance Plan, | ) | |
| | ) | |
| THE ADMINISTRATIVE | ) | |
| COMMITTEE FOR THE WARNER | ) | |
| MEDIA, LLC U.S. SEVERANCE | ) | |
| PLAN, | ) | |
| | ) | |
| ELLEN RUSS, and | ) | |
| | ) | |
| DAVID ZASLAV, | ) | |
| | ) | |
| Defendants. | ) | |

## FIRST AMENDED COMPLAINT

Plaintiff Cristell Whitfield hereby files this  First Amended Complaint against Turner Services, Inc. ("Turner Services"), Warner Media, LLC ("Warner Media"), Ralph Beidelman, as the Administrator for the Warner Media, LLC U.S. Severance Plan (the "Administrator"), the Administrative Committee for the Warner Media, LLC U.S. Severance Plan (the "Committee"), Ellen Russ, and David Zaslav for damages and other relief for violations of the

Employee Retirement Income Security Act of 1974 ("ERISA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and 42 U.S.C. § 1981 ("Section 1981").  Plaintiff alleges that Defendants breached fiduciary duties to her in administering the Warner Media, LLC U.S. Severance Plan (the "Plan"), and that Defendants racially discriminated against her in violation of Title VII and Section 1981 by promoting a less qualified black female into a role that Plaintiff would have received but for her race – white, which also resulted in a constructive discharge.

## JURISDICTION AND VENUE

### 1.

This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331.

### 2.

Venue is proper pursuant to 28 U.S.C. § 1391 because Defendants do business, and the actions and harms alleged occurred in this District.

## THE PARTIES

### 3.

Turner Services, Inc. is a domestic for-profit corporation that is a subsidiary of Warner Bros. Discovery ("WBD").  WBD is a multinational for-profit corporation holding itself out as a "premier global media and entertainment company that creates and distributes the world's most

differentiated and complete portfolio of content and brands across television, film and streaming." *Home*, Warner Bros. Discovery, https://wbd.com/ (accessed June 28, 2024). Turner Services was Mrs. Whitfield's employer during the timeframe relevant to this First Amended Complaint.

**4.**

Defendant Warner Media, LLC is the sponsor of the Warner Media, LLC U.S. Severance Plan, in which Mrs. Whitfield was a participant. It served as a large parent company over many of the Warner Media companies prior to the WBD merger, including Turner Services, Inc.

**5.**

Defendant Ralph Beidelman was the Administrator for the Warner Media, LLC U.S. Severance Plan during the relevant time period. The Administrator is appointed by and serves at the pleasure of the Warner Media, LLC's Executive Vice President of Human Resources. The Administrator is a fiduciary under ERISA and under the terms of the Plan. [*See* Warner Media, LLC Severance Plan, Doc. 9, Ex. A, at 1-2.]

**6.**

Defendant Administrative Committee for the Warner Media, LLC U.S. Severance Plan serves, in addition to other roles, as the decider of appeals when an appeal is made to the Plan Administrator. The Committee is

appointed by Warner Media's Board of Managers and is a fiduciary under ERISA and the terms of the Plan. [Doc. 9, Ex. A, 14.]  When Mrs. Whitfield appealed the determination of her claim for benefits, Shane L. Johnson signed the denial of her appeal on behalf of the Committee.

**7.**

Ellen Russ served as an SVP of Human Resources for News and Sports for WBD during the relevant time period.  She was Mrs. Whitfield's supervisor during her employment.  Defendant Russ acted as a fiduciary of the Plan pursuant to § 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A) and the law interpreting that section.  As outlined herein, Defendant Russ had discretionary authority and control with respect to the management and administration of the Plan, including the proper determination of participation and disbursement to participants.

**8.**

David Zaslav is the Chief Executive Officer of WBD.  Defendant Zaslav acted as fiduciary of the Plan pursuant to § 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A) and the law interpreting that section.  As outlined herein, Defendant Zaslav was a de facto fiduciary of the Plan as he had discretionary authority and control with respect to the management and administration of

the Plan, including the proper determination of participation and disbursement to participants.

**9.**

Mrs. Whitfield is a former employee of Turner Services, Inc., a subsidiary of WBD. Beginning in 2007, Mrs. Whitfield worked for Turner Services through various entities and in various human resources roles. Much of her employment in this capacity was spent supporting sports production. Prior to a massive merger that occurred in 2022, wherein Warner Bros. merged with Discovery, another media conglomerate, Mrs. Whitfield was an HR Director for Turner Sports. This merger produced the WBD conglomerate, for which Mrs. Whitfield was People Partner Lead supporting WBD Sports at the time of her discharge. Mrs. Whitfield is Caucasian.

## STATEMENT OF FACTS

### Mrs. Whitfield's Employment with Defendants
### and the Warner Media Severance Plan

**10.**

By May 2022, Mrs. Whitfield had been employed in various HR roles for WarnerMedia (specifically Turner Services) for over fifteen years, having earned several promotions from HR specialist or manager to the position of HR Director of Turner Sports, which is the position she occupied at that time.

**11.**

In or about that month, WarnerMedia announced that its parent company, AT&T, had reached a multi-billion-dollar deal to merge it with Discovery, Inc. *Discovery and AT&T Close WarnerMedia Transaction*, AT&T, https://about.att.com/story/2022/close-warnermedia-transaction.html (accessed June 28, 2024). WBD is the entity that resulted from the merger.

**12.**

As part of her employment by Turner Services, Mrs. Whitfield participated in the Warner Media, LLC U.S. Severance Plan, which specifically covers employees of Turner Services, Inc.

**13.**

Section I of the Plan provides in pertinent part:

If you are a Regular Employee of a Participating Employer who is not a party to an employment or similar written agreement with the Participating Employer or a Related Company which addresses severance, you **will be** eligible for severance pay as set forth herein if you are notified that your employment will be terminated AND your employment is terminated on or after May 15, 2021 for one of the following two reasons:

**A.** Participating Employer advises you that your employment is being terminated for reasons related to your job performance, including but not limited to excessive absenteeism, or your failure to meet your Participating Employer's reasonable performance expectations ("Termination for Performance"); or

**B.** Participating Employer advises you that your employment is being terminated because of the elimination of a department, reduction in force, reorganization, outsourcing, changes in

operation, material change in job requirements or related reasons <u>or another reason other than your job performance, as determined by your Participating Employer in its sole discretion</u> ("Job Elimination or Other Involuntary Not for Cause Termination").

[Doc. 9, Ex. A, 4] (emphasis added.)

### Defendants' Racially Discriminatory Promotion Decision for the VP of Human Resources for WBD Sports

**14.**

In or about May 2022, Mrs. Whitfield's supervisor, Renee White, then Turner Sports' VP of Human Resources decided to resign.

**15.**

Ms. White's role was subsequently posted for internal applicants only, and Mrs. Whitfield decided to apply for it.

**16.**

Sports production is a highly specialized area in which extensive prior experience doing the same kind of work is indispensable for operating in a prominent role like the VP of HR position. Mrs. Whitfield was highly qualified for the role, having worked for Defendants for around fifteen years to that point, most recently for several years in sports production. Mrs. Whitfield's high standard of performance and her business acumen also bespoke her qualification for the role.

**17.**

After completing the interview and application process, Mrs. Whitfield was surprised to learn that the role had been given to Vanessa Parker, an African American woman with significantly less employment experience with Defendants, no experience in video production (live, taped, or otherwise), no experience in sports media, and inferior business knowledge and acumen.

**18.**

The promotion decision had been made by Ellen Russ, an African American female who at the time occupied the position of SVP of Human Resources, News and Sports.

**19.**

After Ms. Parker assumed the VP role, her department began excluding Mrs. Whitfield from pertinent emails and Ms. Parker specifically began excluding Mrs. Whitfield from important meetings with the clients that she supported, making it exceedingly difficult to perform her job.

**20.**

Due to the racially motivated failure to promote her and exclusion from leadership due to her race, seeing no feasible opportunity for advancement in her employment with Defendants, and wary of the hostile actions taken

against her due to her race, Mrs. Whitfield was constructively discharged from her position on December 19, 2022.

**Defendants' Discriminatory Administration of the Warner Media Severance Plan and Failure to Award Benefits to Mrs. Whitfield**

**21.**

In 2022, prior to the refusal to promote her to the VP position for which she applied, Plaintiff was informed by Renee White that Defendant Russ had stated that severance benefits would be available to those who elected to resign following the merger, in an apparent exercise of discretionary authority granted by the ambiguous eligibility language under the Plan.

**22.**

Defendant Russ informed Ms. White that she had heard this information from David Zaslav.

**23.**

Furthermore, in a meeting with several high-level WBD executives, Defendant Zaslav stated that he wanted the Severance Plan to be used to exit employees who wished to leave following the merger and authorized severance payments under the Plan for these voluntary separations.

**24.**

This practice was then implemented within many sectors and within many subsidiaries of WBD, meaning that many of the Plan's participants were

permitted to take Plan benefits after raising their hands to resign, including Renee White.

**25.**

Because of the dissemination of this information by Defendant Zaslav and its propagation by high-level executives like Ellen Russ, the interpretation of the Plan to function in this manner (i.e., awarding severance to employees who raised their hands to resign) was widely known among WBD employees.

**26.**

Upon information and belief, the above-described interpretation of the Plan language (to include employees who raised their hands to resign) was so well-known and well-communicated that both Ralph Beidleman, the Plan Administrator and the Committee were aware of it.

**27.**

Shortly after the decision to promote Vanessa Parker over her and due to her race, Mrs. Whitfield, in reliance on representations that the Plan had been interpreted to allow benefits to employees who wished to resign, ordered her finances accordingly and informed Defendant Russ that she wished to resign and to receive severance benefits under the Plan, as many before her were permitted to do.

**28.**

Defendant Russ responded that Mrs. Whitfield would not receive severance because Defendants would not offer severance benefits for voluntary resignations, which was plainly not the case.

**29.**

Defendant Russ held the discretionary authority to determine which employees would be eligible for benefits under the Plan.  This was true with respect to Plaintiff, as it was Defendant Russ' decision to deny her participation in the severance plan.

**30.**

Defendant Russ also falsely stated to Mrs. Whitfield that no other employees before her had been given severance benefits after voluntarily leaving employment.

**31.**

Mrs. Whitfield's employment with WBD ended on January 3, 2023.  She never received severance benefits under the Plan.

### Plaintiff's Appeals to the Administrator
### and Administrative Committee

**32.**

On August 7, 2023, Mrs. Whitfield, through her counsel, sent the Administrator a letter detailing the ways that Warner Media had violated the

terms of the Plan, primarily through the actions of its agent and de facto fiduciary, Ellen Russ.  In particular, Mrs. Whitfield described how Warner Media and Defendant Russ failed to administer the Plan equitably by denying her benefits under it while granting benefits to other similarly situated individuals, and by failing to provide her with complete and accurate information about how the Plan was being interpreted and administered.

**33.**

On September 29, 2023, the Administrator responded to Mrs. Whitfield's letter, denying that any of the actions by the Plan and its fiduciaries described in her letter were improper.  The Administrator's letter expressly denied that severance under the Plan was being awarded for voluntary resignations and purported not to be aware that Mrs. Whitfield had been treated differently than other employees.

**34.**

On November 21, 2023, Mrs. Whitfield, through her counsel, and per the terms of the Plan, sent an appeal of the Administrator's decision to the Administrative Committee.  In relevant part, Mrs. Whitfield appealed his findings

> [t]hat the Company's disparate administration of the Plan by offering benefits thereunder to some employees who chose to leave employment the Company while not offering benefits to Ms. Whitfield was not improper/a breach of fiduciary duty… [and]

[t]hat the Company did not act improperly by failing to provide Ms. Whitfield with complete and accurate information about how it was administering the Plan, ultimately resulting in a denial of benefits to her thereunder….

**35.**

On March 4, 2024, the Administrative Committee issued its findings affirming the determination of the Administrator, denying that any of the actions by the Plan and its fiduciaries described in Mrs. Whitfield's August 7, 2023 letter were improper.  Like the Administrator, the Committee also specifically denied that severance under the Plan was being awarded for voluntary resignations and purported not to be aware that Mrs. Whitfield had been treated differently than other employees.

## GOVERNING LEGAL PRINCIPLES

**36.**

Per the Severance Plan's own terms, it is covered by ERISA, stating that "[t]he benefits provided to you by the Warner Media, LLC U.S. Severance Plan for Regular Employees are covered by ERISA."

**37.**

ERISA § 502(a) provides the enforcement mechanisms for breaches of ERISA's requirements.  These include Section 502(a)(3), for claims for breach of fiduciary duties and Section 502(g), for claims for attorney's fees.

**38.**

A participant may bring an action under ERISA § 502(a)(3), for a breach

of fiduciary duty under ERISA § 409(a), which provides, in pertinent part, that

"any person who is a fiduciary with respect to a plan who breaches any of the

responsibilities, obligations, or duties imposed upon fiduciaries by this title

shall be personally liable to make good to such plan any losses to the plan

resulting from each such breach, and to restore to such plan any profits of such

fiduciary which have been made through use of assets of the plan by the

fiduciary, and shall be subject to such other equitable or remedial relief as the

court may deem appropriate, including removal of such fiduciary."  Fiduciaries

face potential personal liability.  *Heffner v. Blue Cross & Blue Shield of Ala.,*

*Inc.*, 443 F.3d 1330, 1338-39 (11th Cir. 2006).

**39.**

ERISA §§ 404(a)(1)(A) and (B) provide, in pertinent part, that a fiduciary

shall discharge its duties with respect to a plan solely in the interest of the

Participants, for the exclusive purpose of providing benefits to participants and

their beneficiaries, and with the care, skill, prudence, and diligence under the

circumstances then prevailing that a prudent man acting in a like capacity and

familiar with such matters would use in the conduct of an enterprise of a like

character and like aims.  These fiduciary duties under ERISA §§ 404(a)(1)(A)

and (B) are referred to as the duties of loyalty, exclusive purpose and prudence, and are the "highest known to the law." They entail, among other things:

a) The duty to maintain and protect plan assets, and to make prudent decisions that are in the best interest of plan participants/beneficiaries;

b) A duty to disclose and inform, which encompasses: (i) a negative duty not to misinform; (ii) an affirmative duty to inform when the fiduciary knows or should know that silence might be harmful; and (iii) a duty to convey complete and accurate information material to the circumstances; and

c) A duty to discharge fiduciary duties with respect to the plan solely in the interest of the participants, for the exclusive purpose of providing benefits to participants with care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

Cases alleging violations of these duties, in whole or in part, are viewed on par with all other similar-type allegations, and fiduciaries are not entitled to any presumption that they have acted prudently.

**40.**

Defendant Warner Media was a fiduciary of the Plan as its sponsor. By and through its agents, it had discretionary authority and control with respect

to the management and administration of the Plan, including the proper determination of participation and disbursement to participants.

### 41.

Defendant Ralph Beidelman, as Administrator of the Plan, is, by the Plan's own terms, a fiduciary of the Plan.

### 42.

Defendant Administrative Committee is a fiduciary of the Plan, as the Plan grants it absolute discretion to interpret the plan and make determinations as to eligibility under the Plan.

## COUNT I
## BREACH OF FIDUCIARY DUTY/ ESTOPPEL
### 29 U.S.C. § 1132(a)(3)
*As to All Defendants*

### 43.

Plaintiff incorporates Paragraphs 1-42 by reference as if fully set forth herein.

### 44.

Following the merger that formed WBD, Defendant Zaslav promulgated a policy that utilized the Plan's grant of discretionary authority for determining participation to allow severance benefits to employees who voluntarily resigned.

**45.**

Defendant Ellen Russ followed this interpretation by using her own discretion to allow severance benefits for employees who resigned from employment, like Renee White.

**46.**

Each of the other Plan fiduciaries of the Plan named herein was aware that the ambiguous eligibility language of the Plan was being interpreted so as to permit severance benefits for voluntary terminations, yet not for Mrs. Whitfield.  In allowing Plaintiff to be treated differently than other similarly situated participants, Defendants breached their fiduciary duties.

**47.**

Additionally, because the Plan's eligibility language was ambiguous and its fiduciaries interpreted so as to benefit other employees who voluntarily resigned, Defendants should be estopped from interpreting it differently with respect to Plaintiff.

**48.**

Furthermore, Plaintiff reasonably relied on several misrepresentations by the Plan's fiduciaries about how its eligibility provisions were being interpreted, including that it was applicable to all employees who voluntarily resigned.

17

**49.**

As a direct result of Defendants' unlawful actions, Plaintiff was injured and is therefore entitled to and seeks all available equitable relief, including but not limited to reformation of the Plan to include as eligible participants those employees who voluntarily resigned.

**COUNT II**
**VIOLATIONS OF TITLE VII- DISCRIMINATION**
*As to Defendant Turner Services, Inc.*

**50.**

Plaintiff incorporates Paragraphs 1-49 by reference as if fully set forth herein.

**51.**

As a Caucasian, Plaintiff is a member of a protected class for purposes of Title VII.

**52.**

Plaintiff was fully qualified, and applied, for the promotion to VP of HR for WBD Sports.

**53.**

In spite of her qualifications, she was rejected for the position due to her race.

**54.**

Instead, Turner Sports hired into the position a less qualified employee who was not Caucasian.

**55.**

Through the discriminatory promotion that signaled to Plaintiff that there was no possible opportunity for advancement with Defendants due to her race, and the intolerable working conditions that followed, including but not limited to, her deliberately being excluded from meetings and communications necessary for her to perform her job, Defendants constructively discharged Plaintiff.

**56.**

Plaintiff is entitled to all damages permitted by law under this count, including but not limited to, compensatory damages, emotional distress damages, punitive damages, and attorneys' fees and costs.

**COUNT III**
**VIOLATIONS OF 42 U.S.C. § 1981- DISCRIMINATION**
*As to Defendant Turner Services, Inc. and Ellen Russ*

**57.**

Plaintiff incorporates Paragraphs 1-56 by reference as if fully set forth herein.

**58.**

As a Caucasian, Plaintiff is a member of a protected class for purposes of Section 1981.

**59.**

Plaintiff was fully qualified, and applied, for the promotion to VP of HR for WBD Sports.

**60.**

In spite of her qualifications, she was rejected for the position due to her race.

**61.**

Instead, Defendants hired into the position a less qualified employee who was not Caucasian.

**62.**

As a result of the discriminatory promotion decision that signaled to Plaintiff that there was no possible opportunity for advancement with Defendants due to her race, and the intolerable working conditions that followed, including but not limited to, her deliberately being excluded from meetings and communications necessary for her to perform her job, Defendants constructively discharged Plaintiff.

**63.**

Defendant Russ is personally liable for the racially discrimination promotion decision that she made.

**64.**

Plaintiff is entitled to all damages permitted by law under this count, including but not limited to, compensatory damages, emotional distress damages, punitive damages, and attorneys' fees and costs.

**WHEREFORE** Plaintiff respectfully requests judgment in her favor on each count in this Complaint and prays that the Court:

1. Grant Plaintiff a jury trial as for each of her claims so triable;

2. Find in favor of Plaintiff and against Defendants for the ERISA violations alleged herein, and award Plaintiff any and all appropriate equitable relief;

3. Award Plaintiff the reasonable costs and expenses of her ERISA claims, including reasonable attorneys' fees pursuant to 29 U.S.C. § 1132(g);

4. Order Defendant to make whole Plaintiff by providing her with out-of-pocket losses as well as back pay in an amount equal to the sum of wages, salary, employment benefits and other compensation denied or lost as a result of Defendant's unlawful acts, together with interest thereon, all in an amount to be proven at trial;

5. Grant statutory/liquidated damages and/or penalties under Title VII and 42 U.S.C. § 1981;

6. Issue an order granting Plaintiff her reasonable attorney's fees and all other fees and costs associated with her Title VII and 42 U.S.C. § 1981 claims;

7. Award Plaintiff declaratory and injunctive relief appropriate to remedy Title VII and 42 U.S.C. § 1981 violations;

8. Award Plaintiff such other and further relief as is just and proper.

**JURY TRIAL IS DEMANDED ON ALL CLAIMS SO TRIABLE.**

This 6th day of November 2024.

*/s/ S. Graham White*

James M. McCabe
Georgia Bar No. 724618
jim@mccabe-lawfirm.com
S. Graham White
Georgia Bar No. 535538
graham@mccabe-lawfirm.com

The McCabe Law Firm, LLC
3355 Lenox Road
Suite 750
Atlanta, GA  30326
Office: (404) 250-3233
Fax: (404) 400-1724

Attorneys for Plaintiff Cristell Whitfield

## <u>LOCAL RULE 7.1 CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing pleading filed with the Clerk of Court has been prepared in 13-point Century Schoolbook font in accordance with Local Rule 5.1(C).

This 6th day of November 2024.

*/s/ S. Graham White*
S. Graham White
GA Bar No. 535538

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| CRISTELL WHITFIELD, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION FILE NO. |
| | ) | 1:24-cv-2981-TWT-LTW |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| TURNER SERVICES, INC., | ) | |
| | ) | |
| WARNER MEDIA, LLC, | ) | |
| | ) | |
| RALPH BEIDELMAN, as the | ) | |
| Administrator for the Warner | ) | |
| Media, LLC U.S. Severance Plan, | ) | |
| | ) | |
| THE ADMINISTRATIVE | ) | |
| COMMITTEE FOR THE WARNER | ) | |
| MEDIA, LLC U.S. SEVERANCE | ) | |
| PLAN, | ) | |
| | ) | |
| ELLEN RUSS, and | ) | |
| | ) | |
| DAVID ZASLAV, | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on November 6, 2024, I filed the foregoing *First Amended Complaint* with the Court's ECF system, which will provide service copies to the following counsel of record for Defendants:

[*Over*]

24

Rachel P. Kaercher
rkaercher@littler.com

Aaron P. Spratlin
aspratlin@littler.com

Littler Mendelson, P.C.
3424 Peachtree Road N.E.
Suite 1200
Atlanta, GA 30326

*/s/ S. Graham White*
S. Graham White
GA Bar No. 535538