## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **CRISTELL WHITFIELD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION FILE NO.** |
| | ) | **1:24-cv-2981-TWT-LTW** |
| **v.** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **TURNER SERVICES, INC.,** | ) | |
| | ) | |
| **WARNER MEDIA, LLC,** | ) | |
| | ) | |
| **RALPH BEIDELMAN, as the** | ) | |
| **Administrator for the Warner** | ) | |
| **Media, LLC U.S. Severance Plan,** | ) | |
| | ) | |
| **THE ADMINISTRATIVE** | ) | |
| **COMMITTEE FOR THE WARNER** | ) | |
| **MEDIA, LLC U.S. SEVERANCE** | ) | |
| **PLAN,** | ) | |
| | ) | |
| **ELLEN RUSS, and** | ) | |
| | ) | |
| **DAVID ZASLAV,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION
### TO PARTIALLY DISMISS PLAINTIFF'S FIRST AMENDED
### COMPLAINT AND INCORPORATED BRIEF IN SUPPORT

COMES NOW Plaintiff Cristell Whitfield, by and through the undersigned

counsel, and respectfully submits this response in opposition to Defendants

Turner Services, Inc. ("Turner Services"), Warner Media, LLC ("Warner Media"),

Ralph Beidelman ("Beidelman"), the Administrative Committee for the Warner

Media, LLC U.S. Severance Plan ("Administrative Committee"), Ellen Russ

("Russ"), and David Zaslav's ("Zaslav") (collectively "Defendants") Motion to Partially Dismiss the First Amended Complaint ("FAC") and incorporated brief in support.  For the reasons explained more fully in the attached brief, Defendants' Motion should be denied.

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

ARGUMENT AND CITATION OF AUTHORITIES ....................................4

   I.   Plaintiff's ERISA Claims Are Not Subject to Dismissal.........................4

      A.  Consistent with Every Other Circuit, Plaintiff's Equitable Estoppel Claim Is a Claim Under Section 502(a)(3)............................................................4

      B.  Plaintiff Has Successfully Pled a Claim for Equitable Estoppel, as Well as Several Claims Other Under Section 502(a)(3). ............................................8

          1.  The Court Should Reject Defendants' Attempts to Introduce Additional Elements to Plaintiff's Equitable Estoppel Claim. ....................9

          2.  Consistent with Supreme Court Precedent and Other Circuits, a Showing of Ambiguity Should Not Be Required for Equitable Estoppel Because That Would Be Inconsistent with the Purpose of the Claim. ......10

          3.  Even If a Showing of Ambiguity is Required for an Equitable Estoppel Claim, the Relevant Plan Language is Ambiguous....................................12

          4.  Defendants Misrepresented the Plan's Eligibility Requirements, Satisfying the Second Element of Plaintiff's Estoppel Claim ....................14

          5.  Plaintiff States a Claim Under § 502(a)(3) Based on Defendant's Misrepresentations and Adequately Pleads Reasonable Detrimental Reliance and an Intent to Deceive in Support Thereof. ..............................15

              i.    *Plaintiff Has Adequately Pled an Intent to Deceive.*..............................16

              ii.    *Plaintiff Has Adequately Pled Detrimental Financial Reliance.*..........18

              iii.   *Plaintiff's Reliance Was Reasonable Based on Her Observation that Other Voluntary Resignations Were Receiving Severance.*............18

      C.  Plaintiff Has Adequately Pled the Fiduciary Status of Each of the Defendants. ..................................................................................19

      D.  Legal Grounds Exist for Awarding Equitable Relief Under § 502(a)(3) Based on Defendants' Disparate Treatment of Plaintiff and Knowingly False Statements Regarding Plan Eligibility...............................................................22

   II.  Plaintiff Has Stated a Claim for Constructive Discharge...................24

**INTRODUCTION**

Many years ago, the Supreme Court, in describing the doctrine of estoppel said, "[H]e who by his language or conduct leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted." *Dickerson v. Colgrove*, 100 U.S. 578, 580 (1879). This case presents the prototypical scenario meant to be remedied by the doctrine of estoppel. Plaintiff Cristell Whitfield has alleged that David Zaslav, the CEO over all of the corporate Defendants in this case, directed that all employees who wished to voluntarily resign be given benefits under the Warner Media, LLC U.S. Severance Plan (the "Plan"). Ms. Whitfield heard about this new interpretation of the plan from one of her superiors and was able to verify its implementation herself, as news of it was pervasive at the WBD companies, and she personally observed that many other employees were permitted to resign and receive severance benefits. Relying on Defendants' representations that all employees who wished to resign would be severance-eligible under the Plan, Ms. Whitfield made financial preparations in expectation of receiving a severance payment for her fifteen years of service. However, sometime later, when she asked about her severance, a plan fiduciary told her that not only would she not be given severance like her co-workers who resigned but that the Company was not offering benefits under the plan for resignations—an outright lie.

While in the Eleventh Circuit, equitable estoppel claims are brought under ERISA § 502(a)(1)(B) as claims for benefits, they are logically a claim for equitable relief under § 502(a)(3). Indeed, every other Circuit in the United States agrees, and it is little wonder why they do; *equitable* estoppel developed as an *equitable* remedy. Furthermore, the primary form of relief that Ms. Whitfield seeks is reformation of the Plan to comport with Defendants' representations about it, which is a form of equitable relief. In *CIGNA Corp. v. Amara*, a case with very similar facts, the Supreme Court held that the appropriate relief was in accordance with the defendant's misrepresentations and that such relief is quintessentially equitable and therefore arises under § 502(a)(3).

Defendants attempt to introduce a number of additional elements as obstacles to Ms. Whitfield's equitable estoppel claim, but to establish that claim in the Eleventh Circuit, all that is required is a showing of two elements, which are ambiguity in the relevant plan language and a misrepresentation about that language. The latter is easily met here, and Defendants only passingly argue otherwise in a footnote. Ms. Whitfield wins on the ambiguity element for two reasons: first, because the Supreme Court in *Amara* made clear that a showing of ambiguity is not required for this type of claim, and second, because even if it is required, Ms. Whitfield can demonstrate ambiguity in the relevant Plan language.

Moreover, even if the Court determines that Ms. Whitfield's claim is not one for estoppel, there are other legal bases for relief under § 502(a)(3). Indeed, as

2

many courts have recognized, the equitable relief available under ERISA is meant to be flexible and adaptable to address the unique harms alleged. Accordingly, Ms. Whitfield also states a claim for breach of fiduciary duty owing to Defendants misrepresentations, which is firmly rooted in Eleventh Circuit precedent and other law directly on point. She also states a claim for breach of fiduciary duty stemming from Defendants' arbitrary and disparate treatment of her vis-á-vis other plan beneficiaries, for which there is also a clear basis law.

Lastly, Ms. Whitfield's claim for constructive discharge survives because she has alleged that *specifically because of her race*, she was denied a promotion for which she was the leading candidate in favor of a woman who was a different race, and that Defendant Russ, the same person who made that decision, was still her supervisor who would be in control of promotion decisions going forward. The constructive discharge analysis asks if a reasonable person would have felt compelled to resign under similar circumstances. To the extent case law disagrees and dictates that Ms. Whitfield should not have felt compelled to resign under these circumstances, Plaintiff simply responds that sometimes, case law must change. As cultural attitudes and norms shift, so too does the reasonable person, and the law must adapt. It would be the *extraordinary* person who when told, "Sorry, we want someone of a different race for that role," would take such blatant discrimination in stride and not feel compelled to resign. Those considerations

aside, Ms. Whitfield's allegations are sufficient under the law for her claims to survive at this early stage, where her burden is exceedingly light.

## ARGUMENT AND CITATION OF AUTHORITIES

All that the law requires a plaintiff to do at the pleading stage is "state a claim to relief that is plausible on its face." *5200 Enters. Ltd. v. City of N.Y.*, 2022 U.S. App. LEXIS 378, at *5 n.3 (11th Cir. Jan. 5, 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The plausibility standard is not akin to a 'probability requirement'." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, a complaint "need only give the defendant fair notice of what the claim is and the grounds upon which it rests." *Doe v. Samford Univ.*, 29 F.4th 675, 694 (11th Cir. 2022) (citation omitted). Importantly, "a court must accept as true all of the [factual] allegations contained in a complaint." *Id.* Moreover, the allegations must be construed in a light most favorable to the plaintiff. *See Hardy v. Regions Mortg.*, Inc., 449 F.3d 1357, 1359 (11th Cir. 2006).

## I. Plaintiff's ERISA Claims Are Not Subject to Dismissal.

### A. Consistent with Every Other Circuit, Plaintiff's Equitable Estoppel Claim Is a Claim Under Section 502(a)(3).

Defendants argue that Plaintiff's equitable estoppel claim is due to be dismissed because in the Eleventh Circuit, that theory of recovery is recognized as a claim under § 502(a)(1)(B), and where an adequate remedy is available under that section, relief under § 502(a)(3) is not permissible. [Doc. 17.1, 8-11]; *see Katz*

4

*v. Comprehensive Plan of Grp. Ins.*, 197 F.3d 1084, 1088-89 (11th Cir. 1999) (holding that no relief is available under Section 502(a)(3) where an "adequate remedy" exists in a claim for benefits); *see also Kane v. Aetna Life Ins.*, 893 F.2d 1283, 1285-86 (11th Cir. 1990) (recognizing claim for equitable estoppel as arising under Section 502(a)(1)(B)).

Equitable estoppel claims under ERISA, however, are actually claims under Section 502(a)(3), which is what every other circuit in the nation has held. *See, e.g., Guerra-Delgado v. Popular, Inc.*, 774 F.3d 776, 784 (1st Cir. 2014); *Devlin v. Empire Blue Cross & Blue Shield*, 274 F.3d 76, 85-86 (2d Cir. 2001); *Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 578 (3d Cir. 2006); *Moon v. BWX Techs., Inc.*, 577 F. App'x 224, 228 (4th Cir. 2014); *Krishna v. Life Ins. Co. of N. Am.*, No. 22-20516, 2023 U.S. App. LEXIS 18648, at *3 (5th Cir. July 21, 2023); *Zahuranec v. Cigna Healthcare, Inc.*, No. 21-3695, 2022 U.S. App. LEXIS 13863, at *18 (6th Cir. May 23, 2022); *Hutcherson v. Krispy Kreme Doughnut Corp.*, No. 1:09-cv-757-RLY-DKL, 2013 U.S. Dist. LEXIS 22837, at *2 (S.D. Ind. Feb. 20, 2013) (recognizing law of 7th Circuit that estoppel claims are properly pursued under 1132(a)(3); *Moore v. Apple Cent., LLC*, 893 F.3d 573, 576 (8th Cir. 2018); *Bafford v. Admin. Comm.*, 101 F.4th 641, 657 (9th Cir. 2024); *Lebahn v. Nat'l Farmers Union Unif. Pension Plan*, 828 F.3d 1180, 1187 (10th Cir. 2016).

The overwhelming weight of authority on this issue reflects the understanding that Section 502(a)(3), which provides for equitable relief, is the

most logical avenue for the pursuit of equitable remedies like estoppel. Indeed, Section 502(a)(3) also provides the most logical avenue for the relief that Plaintiff seeks, which is not explicitly a payment of benefits under the Plan— a legal remedy encompassed by Section 502(a)(1)(B)— but an equitable remedy, namely, "reformation of the Plan to include as eligible participants those employees who voluntarily resigned.") [Doc. 13 ¶ 49.]

The Supreme Court case of *CIGNA Corp. v. Amara* is instructive on this point. 563 U.S. 421 (2011). In that case, a class of participants in retirement plan claimed that CIGNA, their employer, falsely represented to them that an overhaul of the Plan would "enhance" their benefits. *Id.* at 425-28. The District Court agreed with the participants that CIGNA indeed made false statements and ordered reformation of the plan under Section 502(a)(1)(B) so as to guarantee them the material benefit of both the old and new plans instead of making them choose one or the other. *Id.* at 435. On appeal, the Supreme Court determined that reformation was indeed the appropriate remedy but that it was properly awarded under Section 502(a)(3), not Section 502(a)(1)(B). *Id.* at 436 (§ 502(a)(1)(B) does *not* authorize a court to "alter" the terms of a Plan, "at least… where that change, akin to the reform of a contract, seems less like the simple enforcement of a contract as written and more like an equitable remedy").

In a footnote, Defendants argue that because Plaintiff's requested equitable relief would entail her receiving benefits under the Plan, her claim must be

6

brought under Section 502(a)(1)(B).  [Doc. 17-1, 10, n.5.]  But merely because the relief that Plaintiff seeks would ultimately result in the payment of monetary damages to her, that fact does not remove her claims for the realm of equity.  *See Amara* at 421, 440-41 (2011) (reiterating the Supreme Court's holdings that the "appropriate equitable relief" provided for by § 502(a)(3) means relief "typically available" at equity, which includes reformation of a contract based on the principles of estoppel and holding that "the fact that… relief takes the form of a money payment does not remove it from the category of traditionally equitable relief"); *Raniero Gimeno v. NCHMD, Inc.*, 38 F.4th 910, 914 (11th Cir. 2022) (holding that monetary relief is not inconsistent with § 502(a)(3) and recognizing that every other circuit has authorized monetary awards under that section).

Indeed, the relief most often afforded to ERISA equitable estoppel plaintiffs is reformation of the plan to accord with a defendant's representations about it, which may entail the payment of monetary benefits.  Most notably, the Supreme Court awarded relief of this variety in *Amara*, but many other courts have awarded monetary relief for equitable claims of estoppel and reformation.  *See, e.g., Suchin v. Fresenius Med. Care Holdings, Inc.*, No. JKB-23-01243, 2024 U.S. Dist. LEXIS 129587, at *12 (D. Md. July 22, 2024) (denying motion to dismiss equitable estoppel claim that sought to "place the plaintiff in the same position he would have been in had the representations been true," i.e., monetary benefits in accordance with defendant's descriptions of the plan); *Turner v. Liberty Mut. Ret.*

*Ben. Plan*, Civil Action No. 20-11530-FDS, 2023 U.S. Dist. LEXIS 140263, at *24 (D. Mass. Aug. 11, 2023) (permitting § 502(a)(3) claim seeking reformation of a plan such that plaintiff would receive benefits based on defendant's misrepresentations); *Crabbe v. P&G*, No. 1:19-cv-893, 2021 U.S. Dist. LEXIS 551, at *10 (S.D. Ohio Jan. 4, 2021) (relying on *Amara* to deny defendant's motion to dismiss equitable estoppel claim seeking reformation based on defendant's misrepresentations and specifically rejecting defendant's argument that plaintiff's claim for equitable relief was improper because it sought monetary damages in the form of unpaid benefits); *Moyle v. Liberty Mut. Ret. Ben. Plan*, 263 F. Supp. 3d 999, 1026-28 (S.D. Cal. 2017) (accepting that reformation that ultimately results in the payment of monetary benefits "is available to remedy… false, misleading or omitted information" and specifically rejecting defendant's argument that "reformation is foreclosed where the remedy sought would equate to money damages for past harms").

As such, Plaintiff's equitable estoppel claim does not require dismissal under *Katz* because it is not a claim for benefits under Section 502(a)(1)(B) but rather one for equitable relief under Section 502(a)(3).

## B.  Plaintiff Has Successfully Pled a Claim for Equitable Estoppel, as Well as Several Claims Other Under Section 502(a)(3).

To bring an equitable estoppel claim, Plaintiff is only required to plead an ambiguity in the relevant Plan language and that Defendants made

misrepresentations that constitute an informal interpretation of that ambiguity. *Jones v. Am. Gen. Life & Accident Ins. Co.*, 370 F.3d 1065, 1069 (11th Cir. 2004). Notwithstanding, Defendants attempt to inject additional elements into the equitable estoppel analysis that the Eleventh Circuit does not require, namely, detrimental reliance, reasonableness of the reliance, and an intent to deceive. [*Id.* at 15-21.]

Defendants also argue that Plaintiff's equitable estoppel claim fails because she has not demonstrated ambiguity in the relevant Plan language. [Doc. 17-1, 11-15.] But consistent with Supreme Court precedent and the well-reasoned opinions of other circuits, Plaintiff should not be required to plead ambiguity to state an equitable estoppel claim. Still, even if the Court requires such a showing, the relevant portions of the Plan are in fact ambiguous.

Plaintiff also meets the second element of her equitable estoppel claim by alleging that Defendants made misrepresentations based on that ambiguous language. Finally, to the extent that Plaintiff is required to plead intent to deceive and reasonable reliance in order to make out a claim under § 502(a)(3), whether for estoppel, or for breach of fiduciary duty stemming from Defendants' misrepresentations to her regarding Plan eligibility or their disparate treatment of her, she has met her exceedingly light pleading burden to do so.

**1. The Court Should Reject Defendants' Attempts to Introduce Additional Elements to Plaintiff's Equitable Estoppel Claim.**

9

The Eleventh Circuit only requires allegations sufficient to meet two elements in order to make out a claim for equitable estoppel: "(1) the relevant provisions of the plan at issue are ambiguous, and (2) the plan provider or administrator has made representations to the plaintiff that constitute an informal interpretation of ambiguity." *Griffin v. Coca-Cola Refreshments USA, Inc.*, 989 F.3d 923, 936 (11th Cir. 2021) (quoting *Jones*, 370 F.3d at 1069)).

Defendants would lead the Court to believe that to plead an equitable estoppel claim in the Eleventh Circuit, a plaintiff must also allege detrimental reliance, that the reliance was reasonable, and an intent to deceive by the defendant. [Doc. 17-1, 15-21.] In support, defendants rely on *Nat'l Cos. Health Ben. Plan. v. St. Joseph's Hosp.*, 929 F.2d 1558, 1572 (11th Cir. 1991). [Doc. 17-1 at 16.] That case, however, predates *Jones*, which necessarily overruled it to the extent that it requires a plaintiff to plead anything more than ambiguity and a misrepresentation based on the same.

### 2. Consistent with Supreme Court Precedent and Other Circuits, a Showing of Ambiguity Should Not Be Required for Equitable Estoppel Because That Would Be Inconsistent with the Purpose of the Claim.

Defendants cite *Jones* to argue that relief under a theory of equitable estoppel is only available in cases where a plaintiff can demonstrate that the relevant portions of the plan language are ambiguous. Following *Amara*,

however, ambiguity is no longer a required showing for equitable estoppel. As one law review article analyzing *Amara's* wake explained,

> In [*Amara*], the Supreme Court seemed to reject this limitation [requiring ambiguity] when it held that, although a pension administrator's statements about an unambiguous provision of the plan cannot alter the pension plan itself, the statements can be used as the basis for estoppel should the pension participant seek to estop the administrator from claiming that it properly denied benefits under the pension plan. For this reason, post-*Cigna* courts are unlikely to require ambiguity in the actual pension plan as a prerequisite for estoppel claims. Therefore, post-*Cigna* courts should adopt an equitable estoppel formula similar to that proposed below, one that permits estoppel claims regardless of whether the pension plan was ambiguous.

Adam S. McGonigle, *Applying Equitable Estoppel to ERISA Pension Benefit Claims*, 54 Wm. & Mary L. Rev. 627, 641 (2012). The Supreme Court's declination to impose an ambiguity requirement in *Amara* squares with its stated reason for permitting the §502(a)(3) claim in that case to proceed: because "equitable estoppel forms a very essential element in… fair dealing, and rebuke of <u>all</u> fraudulent misrepresentation." *Amara*, 563 U.S. at 441 (emphasis added) (citation omitted). *Amara* reflects the commonsense notion that whether a Plan term is ambiguous should not prevent a defendant from being bound by its representations that it should reasonably expect beneficiaries to take seriously. *Id.* at 441.

Additionally, many courts did not require a showing of ambiguity even prior to *Amara*, recognizing that such a showing is superfluous to the purpose of equitable estoppel, to prevent a defendant from eschewing its fiduciary obligation

to administer ERISA plans consistently with how it represented it would.  See, *e.g.*, *Aramony v. United Way Replacement Benefit Plan*, 191 F.3d 140, 151 (2d Cir. 1999); *Curcio v. John Hancock Mut. Life Ins. Co.*, 33 F.3d 226, 235 (3d Cir. 1994).

Accordingly, the Court should not require a showing of ambiguity in the relevant Plan language and need not consider dismissal on this basis.

### 3. Even If a Showing of Ambiguity is Required for an Equitable Estoppel Claim, the Relevant Plan Language is Ambiguous.

Defendants argue that the relevant Plan language cannot possibly be read to encompass voluntarily terminations like Plaintiff's.  [Doc. 17-1.]   But the wording of the relevant language in the Plan can just as easily be read to cover resignations that Defendant incentivized through its offer of severance benefits and accepted due to its desire to effect a "reduction in force," "job elimination," or "reorganization".  [Doc. 17-1, Ex. A, 3.]  In other words, where an employee like Renee White is informed that the Company is using the severance Plan to cut payroll costs by exiting employees and then resigns with severance, that is no less a "job elimination" or "reduction in force" than the Company sending an email informing an employee she is being laid off.  [Doc. 13 ¶¶ 21, 24.]  This reasonable alternative interpretation also embraces the requirement that an employer "advise" an employee that "[their] employment is being terminated" in that proactively communicating to an employee that the company will accept his

resignation and pay him severance is an advisement of a termination of that role.[1] [*Id.*]

The ambiguity of the relevant Plan language is brought into sharper focus when one appreciates the state of affairs at Turner Sports following the merger of Warner Brothers and Discovery and the representations about the severance plan that had been made at the highest levels of WBD leadership and then relayed to Plaintiff by her superiors. Specifically, following the merger, employees from both the Discovery and Warner side of the merger needed to be offloaded as part of the integration. [Doc. 13 ¶ 11.] David Zaslav, the CEO of WBD, stated that he wanted to use the severance Plan as a cost cutting measure to exit employees who wished to leave, which information was disseminated throughout the Company by the likes of Ellen Russ and Renee White. [*Id.* at ¶ 21-23.] The pervasion of this information was so great that many other employees beside Ms. White raised their hands and were awarded severance benefits. [*Id.* at ¶ 24.] Considering the chaotic and uncertain climate that followed the WBD merger and in light of the

---

[1] Defendants focus their argument respecting ambiguity on the application of the description of a qualifying termination as a "Job Elimination or Other Involuntary Not for Cause Termination." [Doc. 17-1.] Yet, that phrase is not as simplistic as Defendants contend. "Job elimination" could certainly be read as separate and apart from the latter part of the phrase "other involuntary not for cause termination." Defendant may argue that the use of the word "other" across from the disjunctive 'or' means that job elimination is but one of multiple other varieties of involuntary not for cause termination, but "other" could also simply mean innately different from, or distinct such that "job elimination" and "other involuntary not for cause termination" are distinct concepts.

representations of high level WBD employees and the award of severance benefits in conformance with those representations to employees who voluntarily resigned, one can see how a reasonable employee like Plaintiff reading the relevant Plan language could easily view it as ambiguous. Defendants' award of severance benefits for voluntary resignations is plainly inconsistent with its current reading of the relevant Plan language. [Doc. 17-1, 13-14.]

### 4. Defendants Misrepresented the Plan's Eligibility Requirements, Satisfying the Second Element of Plaintiff's Estoppel Claim

In a footnote, Defendants contend that Plaintiff cannot show that they misrepresented the Plan's terms because Defendant Russ *ultimately* informed her that individuals who voluntarily resign are not eligible for benefits under the Plan. [Doc. 17-1, 15, n.8.] To that, Plaintiff responds first that she clearly pled that Defendants made systematic misrepresentations about the terms of the Plan; indeed, they originated from the highest-ranking officer at WBD, its CEO, Defendant Zaslav, and emanated from there throughout the upper echelons of its corporate structure. [Doc. 13 ¶¶ 21-23, 26.] Secondly, while Defendant Russ eventually told Plaintiff that she would not be offered a severance for her voluntary resignation, that came only *after* she had been informed by way of Defendant Zaslav that she would be eligible for benefits for her resignation and relied on that promise. [*Id.* at ¶¶ 21-23, 26.]

14

Defendants argue in another footnote that Plaintiff has not pled that Turner Services, Warner Media, Beidelman, or the Administrative Committee made any relevant misrepresentations. [Doc. 17-1, 18, n. 9.] Characteristic of its Brief, Defendants exaggerate the pleading standard well beyond what it is, failing to appreciate that Plaintiff must only raise a plausible inference that each of the Defendants made representations. As for Defendants Beidelman (the Plan Administrator) and the Administrative Committee, Plaintiff alleged that they were each aware of the misrepresentations regarding eligibility made by Zaslav, Russ, and others [doc. 13 ¶ 26], and that in their denial of Plaintiff's claim for benefits and her subsequent appeal to the Administrative Committee, specifically repeated and ratified those same misrepresentations. [*Id.* at ¶¶ 33, 35.]

As for the corporate Defendants, the statements of Zaslav (CEO of WBD, to which Turner Services and Warner Media are subsidiaries), Russ (a high-ranking Turner Services employee), and Beidelman (administrator of Warner Media's severance plan) regarding Plan eligibility were made in their capacities as agents of those companies. [*Id.* at ¶¶ 3-5, 21-25, 33-35.]

**5. Plaintiff States a Claim Under § 502(a)(3) Based on Defendant's Misrepresentations and Adequately Pleads Reasonable Detrimental Reliance and an Intent to Deceive in Support Thereof.**

Even if the Court does not construe Plaintiff's § 502(a)(3) claim as one for equitable estoppel, she has also plausibly pled claims for breach of fiduciary duty

stemming Defendants' systematic misrepresentations about the terms of the Plan and her reliance thereon. *Jones*, 370 F.3d at 1072 (establishing cause of action for "breach of fiduciary duty based on a plan administrator's material misrepresentations or omissions" and collecting cases); *Landwehr v. Dupree*, 72 F.3d 726, 738 (9th Cir. 1995) ("[T]he equitable remedies available to redress violations of ERISA under section 1132(a)(3) are more flexible and discretionary than those available at law.") (citation omitted).[2]  In a claim for breach of fiduciary duty based on a misrepresentation on which Plaintiff relied to her detriment, Plaintiff must demonstrate reasonable detrimental reliance and an intent to deceive, which she had done.[3]  *See Jones*, 370 F.3d at 1072.

> i.    *Plaintiff Has Adequately Pled an Intent to Deceive.*

Defendants claim that Plaintiff cannot allege that any of them manifested an intent to mislead any of the Plan participants into believing that severance would be available for voluntary separations.  [Doc 17-1, 20.]  As an initial matter, allegations of intent or knowledge may be plead generally.  *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008); *United States ex rel. Norton v.*

---

[2] Plaintiff's relief under this cause of action could include reformation of the Plan but would more likely be reliance damages.

[3] If the Court determines that Plaintiff is required to plead reasonable detrimental reliance and an intent to deceive as part of her equitable estoppel claim, this section suffices to demonstrate that those elements are met for the purposes of that claim as well.

*Blue Ridge Mt. Elec. Mbrshp. Corp.*, No. 1:18-CV-05311-ELR, 2022 U.S. Dist. LEXIS 252626, at *31 (N.D. Ga. Mar. 17, 2022) (holding that Rule 9(b)'s language that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally" is merely a restatement of the Rule 8 pleading standard).

Furthermore, each Defendant's intent to deceive is easily inferable from facts in the FAC. Defendant Zaslav's pronouncement that the Warner Media Severance Plan would be used to effect a reduction in the participant companies' labor forces was disseminated among a number of high level Company officials. [Doc. 13 ¶¶ 21-25.] However, given Defendants' denial of severance benefits to Plaintiff for *her* resignation, it is obvious that Defendants wanted their reduction in force scheme implemented in such a way as to only exit *certain* employees, which belied Defendant Zaslav and the other executives' statements that benefits would be available to *anyone* who wished to resign. [*Id.* at ¶ 21-22.] Furthermore, Defendant Russ repeated Defendant Zaslav's statements regarding the universal availability of severance benefits for voluntary resignations to Renee White but later flatly denied severance benefits to Plaintiff when she resigned and in fact denied that Defendants had *ever* offered severance benefits under such circumstances. [*Id.* at ¶¶ 22, 28-30.] These allegations at the very least raise a plausible inference of an intent to deceive at this early stage. *See Bowen v. Nationwide Mut. Ins. Co.*, No. 1:19-cv-00017, 2019 U.S. Dist. LEXIS 171211, at *14 (M.D. Pa. Sep. 16, 2019) (ERISA case finding a plaintiff raised a plausible

inference of intent by pleading that defendant acted inconsistently with prior representations, holding that while "[p]laintiff's allegations are far from overwhelming evidence of intent, they are sufficient to show a plausible claim and to thus unlock the doors of discovery.") (citation omitted).

### ii. *Plaintiff Has Adequately Pled Detrimental Financial Reliance.*

The FAC establishes that Plaintiff reordered her finances as a direct result of Defendants' misrepresentation representations.  Curiously, Defendants argue that Plaintiff does not allege that she detrimentally relied on any of their misrepresentations regarding administration of the Plan, while simultaneously acknowledging that she reordered her finances as a result of those representations.  [Doc. 17-1, 18-19; Doc. 13 ¶ 27.]   That allegation is sufficient at this stage.  *See Jones*, 370 F.3d at 1072 (detrimental reliance established where plaintiffs "contend[ed] that they relied on [defendant's] misrepresentations to their detriment in making financial plans for themselves and their families"); *Vanlinski v. E & B Giftware, LLC*, No. 3:07-CV-589, 2007 U.S. Dist. LEXIS 118965, at *14 (M.D. Pa. Nov. 7, 2007) (finding that plaintiff's allegations that he "suffered financially, physically, and mentally" sufficiently established detrimental reliance for purposes of motion to dismiss § 502(a)(3) claim).

### iii. *Plaintiff's Reliance Was Reasonable Based on Her Observation that Other Voluntary Resignations Were Receiving Severance.*

Defendants contend that Plaintiff's reliance on their representations regarding eligibility was not reasonable because, they say, the Plan's language is "unambiguous" and because she was relying on "third-hand" information from Renee White about Defendants' designs to use the severance Plan to exit voluntary resignations. [Doc. 17-1, 20-21.]

Despite Defendants' dismissive characterization of the information that Plaintiff gained from White, Plaintiff had good reason to believe that it was factual, not least because it was relied to her by Renee White, a trusted confidant and a high-level employee of Turner Sports. Additionally, the information that Plaintiff received was highly detailed and had ultimately come from WBD's CEO, and perhaps most tellingly, that Plaintiff could verify the report by observing that others, including White, were in fact receiving severance payments for their voluntary separations. [Doc. 13 ¶¶ 21-25.]

## C. Plaintiff Has Adequately Pled the Fiduciary Status of Each of the Defendants.

Defendants urge that Plaintiff has not alleged the fiduciary status of four of the Defendants: Turner Services, Warner Media, Zaslav, and Russ. [Doc. 17-1, 16.] They specifically argue that those four Defendants cannot be fiduciaries because they did not take any fiduciary actions toward her, and furthermore, the Plan itself designates just two fiduciaries: the Administrator and the Administrative Committee. [*Id.* at 17-18.]

19

An entity is a fiduciary under ERISA if it "exercises any discretionary authority or discretionary control respecting management" or "administration" of the plan. 29 U.S.C. § 1002(21)(A); *see also Pledger v. Reliance Tr. Co.*, 240 F. Supp. 3d 1314, 1329 (N.D. Ga. 2017) (noting that "courts have been hesitant to resolve breach of fiduciary claims under ERISA due to a purported lack of fiduciary status at the motion to dismiss stage when there are allegations that the various defendants are interrelated"); *In re Elec. Data Sys. Corp. ERISA Litig.*, 305 F. Supp. 2d 658, 665 (E.D. Tex. 2004) ("[T]he issue of fiduciary status is a mixed question of law and fact" and "courts typically will have insufficient facts at the motion to dismiss stage…to determine functional or named fiduciary status.").

Defendants' argument that Zaslav and Russ did not act as fiduciaries is somewhat puzzling considering that Defendants are aware of and in multiple instances cite Plaintiff's allegations that it was Zaslav who made the ultimate determination that benefits under the Plan should be awarded for resignations, which is clearly an exercise of discretionary authority.   [Doc. 13 ¶¶ 21-25.] Likewise, Russ "followed this interpretation by using her own discretion to allow severance benefits for employees who resigned from employment, like Renee White" while denying them for others, like Plaintiff, also plainly fiduciary acts. [*Id.*] The fact that the Plan does not explicitly vest Russ and Zaslav with fiduciary authority is of no moment.   *See Gimeno*, 38 F.4th 910 at (emphasizing the importance of looking to the realities of a plan's administration to ascertain

fiduciary status, stating that "[p]roof of fiduciary status may come from the plan document, but can also come from the factual circumstances surrounding the administration of the plan, even if these factual circumstances contradict the designation in the plan document.") (citation omitted).

With respect to Warner Media, the Plan sponsor, and Turner Services, her employer, Plaintiff pleads that these entities, who may only act through their agents, assumed fiduciary status through the actions of those agents. Specifically, as Plaintiff explained in her section on Defendants' misrepresentations, Zaslav was the CEO of WBD, a conglomerate of which Turner Services and Warner Media Services were subsidiaries. [Doc. 13 ¶¶ 3-4, 8.] His actions may thus be imputed to those entities, particularly in light of the fact that they acceded to his edicts regarding Plan eligibility. [*Id.* at ¶¶ 21-24.] Furthermore, Plaintiff could only have attained severance benefits under the Plan through her employer Turner Services, and specifically its agent Ellen Russ, who possessed de facto authority in her capacity as its SVP of Human Resources to determine who was eligible for benefits and who was not. [*Id.* at ¶¶ 28-29.] To wit, Plaintiff specifically alleges in the FAC that her claims letter to the Administrator "detail[ed] the ways that Warner Media had violated the terms of the Plan, primarily through the actions of its agent and de facto fiduciary, Ellen Russ." [*Id.* at ¶ 32]; *see Gimeno*, 38 F.4th at 915 (plaintiff's employer assumed to be fiduciary at pleading stage

looking based on allegations that the employer's human resources department was responsible for plaintiff's severance application process).

**D.    Legal Grounds Exist for Awarding Equitable Relief Under § 502(a)(3) Based on Defendants' Disparate Treatment of Plaintiff and Knowingly False Statements Regarding Plan Eligibility.**

Section 502(a)(3) confers on district courts the important remedial power to provide equitable relief to plaintiffs who were harmed by the fiduciaries of the plan in which they participated, but who cannot state a cause of action that fit neatly within the confines of a § 502(a)(1)(B) claim. *Katz*, 197 F.3d at 1088-89 (§ 502(a)(3) exists to provide relief to injured ERISA plaintiffs who have no "adequate remedy" under § 502(a)(1)(B)). Thus, the power with which § 502(a)(3) entrusts the courts must necessarily be broad and malleable enough to afford them the capacity to redress the myriad ways that a fiduciary might conceivably abuse its power without technically violating a plan's written terms. *NRDC v. Winter*, 508 F.3d 885, 886 (9th Cir. 2007) (explaining that "injunctive relief must be tailored to remedy" harm in particular case).

In this case, it is within the Court's powers under § 502(a)(3) to provide equitable relief to address the specific harm caused by Defendants' actions, and there is a clear legal basis for doing so. In the virtually identical case of *Flandreau v. Signode Supply Corp.*, the plaintiff-employee's allegations concerned employer-sponsored benefits plans that by their written terms included only those 55 or older. No. 89 C 1782, 1989 U.S. Dist. LEXIS 8192, at *3 (N.D. Ill. July 10, 1989).

Years later, as part of a reorganization, several executives were asked to retire. *Id.* None of the executives were 55 years of age and so did not qualify for benefits under the plan by its terms. *Id.* In spite of that, the plaintiff was the only one among them who was not "grandfathered in" and awarded benefits. *Id.* He sued under § 502(a)(3), which defendant moved to dismiss. *Id.* at * 3-8.

The Court denied the motion, identifying two specific breaches of fiduciary duty. First, it reasoned that "[c]onduct is arbitrary or capricious when similarly situated persons or beneficiaries are treated differently and, in some sense, inequitably," finding that defendants had breached their duties to plaintiff by rendering him "the only one of several similarly situated executives not to receive accelerated benefits." *Id.* at * 6-7. It held that "[b]y amending the plans so that all but one executive became vested upon early retirement, the defendants treated similarly situated executives differently and violated their fiduciary duties…." *Id.*

The Court found that the plaintiff stated a separate claim for breach of fiduciary duty stemming from his allegations that defendants lied about how they were modifying the plan's written eligibility requirements. The court reasoned that "[t]hese facts suggest that [a fiduciary] may have lied to [plaintiff]. If so, [the fiduciary] breached his fiduciary duty of loyalty not to misrepresent or lie about present or prospective benefits associated with an ERISA plan." *Id.* at *7.

Plaintiff's allegations establish that the Plan's fiduciaries, who owed the highest legal duties to her, misused and contorted the Plan to achieve their own

ends and in so doing, deprived Plaintiff, a fifteen-year employee, of severance benefits that it awarded to others in her exact situation, then lied to her about it. As in *Flandreau* a case with nearly indistinguishable facts, the Defendants in this case clearly breached their fiduciary duties to Plaintiff, thus entitling her to relief.

## II.     Plaintiff Has Stated a Claim for Constructive Discharge.

Defendants are correct that Plaintiff may only state a claim for constructive discharge if a reasonable person in her position would have felt compelled to resign.  [Doc. 17-1, 23]; *Palmer v. McDonald*, 624 F. App'x 699, 704 (11th Cir. 2015).  They are incorrect that a person like Ms. Whitfield could not reasonably have felt compelled to resign after being denied a promotion due to her race and having to continue working under the person who made the promotion decision, which person would also be the decisionmaker for future promotions.[4]  [Doc. 13 ¶¶ 14-20.]  Maybe in 1960, that expectation would have been reasonable, but not today.  No reasonable person would tolerate such treatment, nor should they have to.  Other courts agree.  *See Halbrook v. Reichhold Chems., Inc.*, 735 F. Supp. 121, 127-28 (S.D.N.Y. 1990) (denying summary judgment for employer on constructive discharge claim where employee alleged a discriminatory denial of a promotion that was followed by a change in responsibilities, "the absence of any further

---

[4] In addition, person promoted over Plaintiff had already begun mistreating her in the short time following her promotion, including excluding her from important client meetings.   [Doc. 13 ¶ 55.]

chance of advancement," and humiliation and embarrassment, cautioning that plaintiff's alleged "combination of factors… must be…[t]aken as a whole"); *Joyce v. Office of the Architect of the Capitol*, 966 F. Supp. 2d 15, 26 (D.D.C. 2013) (holding that "intolerableness of working conditions is very much a function of the reasonable expectations of the employee" and "[a]n employee who expected genuine opportunities for advancement, for example, may reasonably feel compelled to quit when discrimination has closed those doors") (citation omitted).

Defendants' argument that Plaintiff has not alleged facts demonstrating that her constructive discharge was "because of" her race is also without merit. [Doc. 17-1, 24.]  Based on facts surrounding her lack of promotion outlined in the previous paragraph, a reasonable inference may be drawn that plaintiff's severely diminished opportunity for advancement in the company owed to her race.  *Zierke v. R.R. Donnelley & Sons Co.*, Case No. 94 C 7593, 1997 U.S. Dist. LEXIS 12925, at *23 (N.D. Ill. Aug. 26, 1997) (denying summary judgment to employer on constructive discharge claim, holding that employee's contentions that he was denied a promotion because of his protected characteristic, which in turn signaled that he had no opportunity for advancement, satisfied the causation requirement of constructive discharge claim).

## <u>CONCLUSION</u>

For the foregoing reasons Defendant's Motion to Partially Dismiss the FAC should be denied in its entirety.

This 7th day of March 2025.

/s/ S. Graham White
James M. McCabe
Georgia Bar No. 724618
jim@mccabe-lawfirm.com
S. Graham White
Georgia Bar No. 535538
graham@mccabe-lawfirm.com
The McCabe Law Firm, LLC
3355 Lenox Road
Suite 750
Atlanta, GA  30326
Office: (404) 250-3233
Fax: (404) 400-1724
jim@mccabe-lawfirm.com

Attorneys for Plaintiff

26

## <u>LOCAL RULE 7.1 CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing pleading filed with the Clerk of Court has been prepared in 13-point Century Schoolbook font in accordance with Local Rule 5.1(C).

This 7th day of March 2025.

<u>/s/ S. Graham White</u>
S. Graham White
GA Bar No. 535538

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| CRISTELL WHITFIELD, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION FILE NO. |
| | ) | 1:24-cv-2981-TWT-LTW |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| TURNER SERVICES, INC., | ) | |
| | ) | |
| WARNER MEDIA, LLC, | ) | |
| | ) | |
| RALPH BEIDELMAN, as the | ) | |
| Administrator for the Warner | ) | |
| Media, LLC U.S. Severance Plan, | ) | |
| | ) | |
| THE ADMINISTRATIVE | ) | |
| COMMITTEE FOR THE WARNER | ) | |
| MEDIA, LLC U.S. SEVERANCE | ) | |
| PLAN, | ) | |
| | ) | |
| ELLEN RUSS, and | ) | |
| | ) | |
| DAVID ZASLAV, | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing pleading was filed with the

Court's ECF system by counsel for Plaintiff which automatically provides

service copies to counsel of record.

This 7th day of March 2025,

/s/ S. Graham White
S. Graham White
Attorney for Plaintiff