IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CRISTELL WHITFIELD,<br><br>    Plaintiff,<br><br>v.<br><br>TURNER SERVICES, INC., *et al.*,<br><br>    Defendants. | CIVIL ACTION NO.<br>1:24-CV-02981-TWT-LTW |

## DEFENDANTS' REPLY IN SUPPORT OF ITS MOTION TO PARTIALLY DISMISS PLAINTIFF'S AMENDED COMPLAINT

Plaintiff's opposition is a series of misguided and inconsistent assertions about the statutory framework of ERISA to try to distract the Court from clear mandatory authority showing her allegations do not state a claim for relief. Indeed, Plaintiff's hodgepodge response nonsensically states in one paragraph that "[t]o bring an equitable estoppel claim, Plaintiff is only required to plead an ambiguity in the relevant Plan language and that Defendants made misrepresentations that constitute an informal interpretation of that ambiguity" before immediately asserting in the next that "Plaintiff should not be required to plead ambiguity to state an equitable estoppel claim." (Doc. 25 at 11-12; *see also id.* at 13-14 (same)). This Court should not be misled by Plaintiff's contradictory assertions.

Under *Jones v. Am. Gen. Life & Acc. Ins. Co.*, 370 F.3d 1065 (11th Cir. 2004), which is mandatory authority binding on this Court, a plaintiff in the Eleventh Circuit who seeks to estop a Plan from denying benefits because she was misled by

representations about ambiguous plan language **must** proceed under § 502(a)(1)(B). Thus, the First Amended Complaint's ("FAC") § 502(a)(3) breach of fiduciary duty claim based on such allegations must be dismissed. Since Plaintiff cannot plausibly allege ambiguity in Plan terms, her ERISA claim should be dismissed with prejudice, as amendment to recharacterize as a § 502(a)(1)(B) claim would be futile.

Regardless of which ERISA provision Plaintiff proceeds under, the allegations in the FAC do not support an estoppel claim. Nothing about *Jones* overruled the basic elements of equitable estoppel, which courts have continued to apply to ERISA equitable estoppel claims post-*Jones*. Despite taking the primary position that those elements are "no longer required," Plaintiff also asserts they are adequately alleged here, all while making little to no reference to the actual allegations in her FAC. A Rule 12(b)(6) motion tests the sufficiency of the ***pleading***, and Plaintiff's failure to adequately ***plead*** facts establishing the elements of equitable estoppel dooms her claim.

Finally, Plaintiff's argument against dismissal of her constructive discharge claim likewise ignores mandatory authority within this Circuit by relying on the threadbare assertion that "case law must change." (Doc. 25 at 6). No sound basis exists to permit her admittedly deficient constructive discharge claim to proceed.

I. **ARGUMENT**

    A. **The FAC Fails to Plausibly Allege Equitable Estoppel Based on Misrepresentations about Ambiguous Plan Terms under the**

### Mandatory Authority of *Jones*.

#### 1. *Jones* Is Mandatory Authority Binding on this Court.

Plaintiff's argument that her estoppel claim is not subject to dismissal because "every other circuit in the nation" has evaluated such claims under § 502(a)(3) conveniently ignores that *Jones* is binding authority that has not been overruled. (*Cf.* Doc. 25 at 8). Plaintiff does not distinguish her claims from *Jones*. Such mandatory authority must be followed unless it is overruled by an *en banc* Eleventh Circuit or the Supreme Court. *U.S. v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008).

#### 2. The FAC Seeks to Obtain Benefits Under the Plan through Estoppel, Which Is a § 502(a)(1)(B) Claim under *Jones*.

Fundamentally, the allegations in the FAC seek to remedy what Plaintiff claims was an improper denial of benefits under the Plan. (*Cf.* Doc. 17-1 at 9-11 & n.5 (discussing important distinction between relief and remedy in determining whether a § 502(a)(3) claim exists)).[1] Such a claim must be brought under §

---

[1] Plaintiff misconstrues Defendants' argument here. Defendants do not contend that Plaintiff's claim under § 502(a)(3) fails because there is some flaw in the type of ***relief*** that Plaintiff seeks to recover. (*Cf.* Doc. 25 at 9-10). Quite the opposite. Plaintiff cannot proceed under § 502(a)(3) because the ***injury that she seeks to remedy***—regardless of how she frames the relief requested—is one that can be addressed through § 502(a)(1)(B), as articulated in *Jones*. *Cf.* 370 F.3d at 1073-74 (discussing *Varity v. Howe*, 516 U.S. 489, 515 (1996) and reiterating that "[t]he relief that the plaintiffs sought in their complaint was not relevant to this inquiry"); *Cook v. Campbell*, 482 F.Supp.2d 1341, 1359 (M.D. Ala. 2007) ("The bare reality, however, is that a request to estop a fiduciary from denying promised benefits seeks the same outcome as a direct request for money owed due to a fiduciary's breach of duties and amounts to a legal remedy not recoverable under § 502(a)(3)[].").

502(a)(1)(B), whether as an action "akin to common law breach of contract" or as an action to estop a denial of benefits that contradicts a fiduciary's stated interpretation of ambiguous plan terms. *Jones*, 370 F.3d at 1069-70. Such a claim to obtain benefits based on representations about ambiguous plan language is precisely the cause of action Count I of the FAC embodies. (Doc. 13 ¶¶ 21, 46-47). As a result, Plaintiff's *§ 502(a)(3)* estoppel claim based on those allegations must be dismissed. (*See* Doc. 17-1 at 9-11(collecting cases)).

### 3. Plaintiff Cannot Adequately Allege Ambiguity to State a Claim for Benefits Through Estoppel Under *Jones*.

While Plaintiff has a remedy available under § 502(a)(1)(B), she should not be permitted to amend her Complaint to allege such a claim because it would be futile given that the eligibility language of the Plan is not plausibly ambiguous. Plaintiff's arguments otherwise, which focus on alleged *representations about the Plan* and not on *the Plan language itself*, have no merit. (*See* Doc. 25 at 15-17 (inexplicably discussing oral representations to people other than Plaintiff and the "climate" at WBD in an effort to show Plan language ambiguity)); *Sci. Games Int'l, Inc. v. Merit Ink & Coating Co.*, No. 2:04-CV-170-RWS, 2006 WL 8433795, at *4 (N.D. Ga. Sept. 27, 2006) (discussing importance of starting with the language of the contract itself to determine ambiguity); *Stannard v. Allegis Grp., Inc.*, No. CIVA1:08CV3357TCB, 2009 WL 1309751, at *4 (N.D. Ga. Apr. 27, 2009) (matters outside a contract not considered where contractual language is clear on its face).

Plaintiff's only argument based upon the actual Plan language is a threadbare assertion that the "relevant language in the Plan can just as easily be read to cover resignations that Defendant incentivized through its offer of severance benefits and accepted due to its desire to effect a 'reduction in force,' 'job elimination,' or 'reorganization.'" (Doc. 25 at 15). Even assuming "Defendant"[2] offered severance benefits "to effect" a reduction in force, job elimination, or reorganization, that fact would not mean the Plan's eligibility language is ambiguous as to whether it includes "voluntary resignations." To the contrary, the Plan language is abundantly clear that severance is available if your "**Participating Employer advises you that *your employment is being terminated*"** for any of those three conditions (among others). (Doc. 17-2 at 5 (emphasis added)). This is obviously and clearly not intended to encompass voluntary resignation.[3] In short, Plaintiff has utterly failed to refute Defendants' argument that the Plan's eligibility language is unambiguous.

Perhaps recognizing her weak position regarding the purported ambiguity of the Plan language, Plaintiff asserts the Supreme Court rejected any ambiguity requirement for estoppel claims in *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011).

---

[2] It is not clear to which "Defendant" Plaintiff refers with this assertion.
[3] In any event, Plaintiff has not alleged she "voluntarily resigned" due to a reorganization, reduction in force, or job elimination. (*See generally* Doc. 13). She alleges that she resigned because she did not get a promotion and no reasonable person in her position would continue in her job. (*See id.* at Count III). As such, the purported ambiguity she attempts to establish here, even if it could be read into the document (which it cannot), would not save her claim.

(Doc. 25 at 13-14). The Court, however, did no such thing; the words "ambiguity", "ambiguous", or any derivative thereof do not even appear in the decision. Instead, Plaintiff relies on a 2012 law review article opining as to what may or may not happen after that decision. (*Id.* at 14). That article does not overrule *Jones* or other cases in the Eleventh Circuit requiring ambiguity in plan terms as an element of estoppel claims seeking benefits based on alleged oral representations about Plan language. *See Keys v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 387 F.Supp.3d 1372, 1381 (M.D. Fla. 2019) (discussing line of authority in detail and dovetail of ambiguity requirement with case law prohibiting oral modification of plan terms); *cf.* (Doc. 17-1 at 22 (discussing prohibition on oral modification of ERISA plans)).[4]

### B. *Jones* Does Not Overrule or Diminish the Essential Elements of an Estoppel Claim, Which Are Not Present Here.

---

[4] The other cases Plaintiff cites as "rejecting" ambiguity requirements are non-binding. (Doc. 25 at 15). And Plaintiff's characterization of them as "rejecting" an ambiguity requirement is tenuous at best. While *Curcio v. John Hancock Mut. Life Ins. Co.*, 33 F.3d 226 (3d Cir. 1994) addressed an estoppel claim even after finding no ambiguity in plan terms, it did not squarely make any holding about an ambiguity requirement. The same is true for *Aramony v. United Way Replacement Benefit Plan*, 191 F.3d 140 (2d Cir. 1999). That case recognized the existence of Eleventh Circuit authority requiring ambiguity before noting that it was not binding *in the Second Circuit*. *Id.* at 152. The *Aramony* court then found that the district court erred in relying on such non-mandatory authority to hold that ambiguity alone was sufficient to satisfy the "extraordinary circumstances" requirement of a promissory estoppel claim in the Second Circuit. *Id.* In other words, the *Aramony* court did not reject the notion that ambiguity could be required for an ERISA estoppel claim, but instead found that ambiguity alone is not a bright line "extraordinary circumstance," suggesting that "ambiguity plus" may be required in that jurisdiction. *See id.*

Defendants did not, as Plaintiff asserts, conjure additional elements beyond those fundamentally required to succeed on an estoppel claim by pointing out Plaintiff's failure to adequately allege (1) intent to deceive by each Defendant; (2) her detrimental reliance on a misrepresentation made by each Defendant; or (3) that any such reliance, if it were alleged, was reasonable.

First, if Plaintiff is permitted to proceed under § 502(a)(1)(B), it is illogical to suggest that by establishing an estoppel cause of action based on ambiguity under this provision, *Jones* somehow did away with the other traditional elements of the claim. Indeed, cases within the Eleventh Circuit, even post-*Jones*, explicitly note such principles still apply. *E.g.*, *Keys*, 387 F.Supp.3d at 1381 (citation omitted) (stating after *Jones* that "[e]quitable estoppel consists of words or conduct which causes another person to believe a certain state of things exists, and to consequently change his or her position in an adverse way"); *Larsen v. Airtran Airways, Inc.*, No. 8:07-CV-442-T-TBM, 2009 WL 4827522, at *11 (M.D. Fla. Dec. 14, 2009) (citations omitted) (stating after discussing *Jones* that "[i]n addition to establishing that the statement is in the nature of an interpretation of an ambiguous provision of the plan, the plaintiff must show" the traditional elements of estoppel). To hold otherwise would permit a plaintiff to proceed on an estoppel claim without the detrimental reliance necessary for actual harm required by constitutional principles of standing. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016).

Second, *Jones* did not alter the fundamental elements of any traditional equitable estoppel claim Plaintiff purports to pursue under a breach of fiduciary duty theory *through § 502(a)(3)*. While Defendants do not believe that Plaintiff even attempted (much less succeeded) to plead any such viable claim in the alternative,[5] Plaintiff appears to concede that such a claim would require intent to deceive and reasonable detrimental reliance. (*Cf.* Doc. 25 at 19, 21-22 (inexplicably citing *Jones* itself for these elements)). Moreover, the vast majority of the non-binding cases that Plaintiff attempts to foist upon this Court arise under § 502(a)(3) and recite the traditional elements of equitable estoppel for those claims. *Amara* itself recognizes that "when a court exercises its authority under § 502(a)(3) to impose a remedy equivalent to estoppel, a showing of detrimental reliance must be made." 563 U.S. at 443. Plaintiff has not adequately alleged facts to demonstrate the type of reasonable detrimental reliance entitling her to equitable relief here.

1. **No facts plausibly allege detrimental reliance.**

Plaintiff does not dispute that there is no plausible allegation in the Amended Complaint that her resignation constituted detrimental reliance on Defendants' alleged misrepresentations, instead focusing solely on the assertion that she "reordered her finances" as sufficient to support her claim. (Doc. 25 at 21). That allegation, however, does not show any ***detrimental*** reliance, much less detrimental

---

[5] *See* Part I.C., *infra*.

8

reliance that would be appropriately remedied by reformation of the Plan to award Plaintiff benefits. (*Cf. id.* at 19 n.2 (conceding the appropriate remedy for this claim would be "reliance damages")). Unlike the cases cited in the Opposition, there is no assertion in the FAC that the "ordering" of Plaintiff's finances was "to her detriment" or that she "suffered" harm because of it. (*Compare* Doc. 13 *with* Doc. 25 at 21 (citing cases)). Consequently, the "reordered finances" allegation is insufficient to support an equitable estoppel claim.

### 2. No facts plausibly allege reasonable detrimental reliance.

In response to Defendants' arguments that Plaintiff's reliance on second and third-hand information was unreasonable given the unambiguous Plan language, Plaintiff makes arguments about her "trusted confidant" Renee White and the "high-level sources" of "highly detailed" information that she "could verify" by observing severance being granted for voluntary resignations. (Doc. 25 at 22). Tellingly, none of these assertions are supported by citation to such allegations in the FAC. (*See id.*). At the pleading stage, it is the FAC, and not unsupported assertions made in a brief, that control whether the claim moves forward. *Donovan v. Rivadeneira*, 557 F.Supp.3d 1236, 1244 (S.D. Fla. 2021) (collecting authority). Even if such factual allegations were in the FAC, reliance on information that contradicts clear written plan terms is not reasonable as a matter of law, and for this additional reason Plaintiff's claim should be dismissed. *Cf. Am. Casual Dining, L.P. v. Moe's Sw.*

9

*Grill, L.L.C.*, 426 F.Supp.2d 1356, 1365 (N.D. Ga. 2006) (citations omitted) ("A party cannot reasonably rely upon fraudulent promises which are directly contradicted by the terms of an applicable [written document].").

### 3. No facts plausibly allege intent to deceive Plaintiff.

Defendants do not contend that "intent to deceive" must be pled with particularity, as Plaintiff asserts. (*Cf.* Doc. 25 at 19-20). However, to establish an estoppel claim, a plaintiff must allege facts that show "the defendant intended that the misrepresentation be acted on or had reason to believe that **the plaintiff** would rely on it[.]" *Larsen*, 2009 WL 4827522, at *11 (emphasis added); *see also Katz v. ALLTEL Corp.*, 985 F.Supp. 1157, 1161 (N.D. Ga. 1997) (citation omitted). There are simply not allegations in the FAC from which a reasonable person could infer that Zaslav or Russ had any reason to believe ***Plaintiff*** would rely on their alleged statements about the Plan given that they were made outside her presence. Therefore, the second- and third-hand nature of their alleged misrepresentations is fatal to the "intent" element of Plaintiff's estoppel claim.

### C. Any Alternative Claim for Estoppel under § 502(a)(3)[6] Should Be

---

[6] As noted in Defendants' Motion, *Jones* permitted a plaintiff to plead an estoppel claim under § 502(a)(3) in the alternative, based on allegations that the plan terms there were **not** ambiguous, that the plaintiff was **not** entitled to benefits under the unambiguous terms of that plan, and that the defendants had instead engaged in repeated and systematic misrepresentation of plan terms in violation of their fiduciary duty to provide accurate plan information. (*See* Doc. 17-1 at 15 n.8). Despite Plaintiff's threadbare assertions in her Opposition as to the existence of such a claim, no such allegations exist in the Amended Complaint. (*Compare* Doc. 25 at

10

**Dismissed for Failure to Adequately Allege Fiduciary Status.**

Any alternative estoppel claim based on systematic misrepresentations of a fiduciary under § 502(a)(3) would fail for the additional reasons that Zaslav and Russ are not adequately alleged to be fiduciaries of the Plan. Plaintiff's contention that Zaslav and Russ (and by extension, Turner Services and Warner Media) are adequately alleged to be fiduciaries because of conclusory assertions that Zaslav and Russ had "discretionary authority" misses Defendants' argument entirely. Defendants argue that such threadbare allegations are "a classic example of a formulaic recitation [] of the elements of a cause of action" and need not be credited, particularly where they are contradicted by documents central to the allegations in the Complaint. (Doc. 17-1 at 17-18); *see also In re ING Groep, N.V. ERISA Litig.*, 749 F.Supp.2d 1338, 1346 (N.D. Ga. 2010) (dismissing breach of fiduciary duty claim against company's SVP and CEO with similar allegations for lack of plausible fiduciary status particularly given that no plan provisions supported alleged discretionary authority, responsibility, or control).

**D.  *Flandreau* Does Not Permit Plaintiff to Bring a Claim Premised on an Alleged Right to Benefits in Contravention of Plan Terms.**

The only authority cited by Plaintiff in support of her view that she should be

---

18-19, *with* Doc. 13). Defendants thus make these arguments in an abundance of caution, as Plaintiff cannot amend her pleading to assert such a claim through her Opposition Brief. *Donovan*, 557 F.Supp.3d at 1244 (collecting authority).

11

awarded benefits in contravention of Plan terms is an unpublished district court decision from the Northern District of Illinois, *Flandreau v. Signode Supply Corp.*, No. 89 C 1782, 1989 WL 82001 (N.D. Ill. July 12, 1989). Its relevant holding regarding alleged disparate treatment[7] is not at all "virtually identical" to this case. (*Compare* Doc. 25 at 25). Instead, *Flandreau* held that allegations fiduciaries had "amend[ed] the plans so that all but one executive became vested upon early retirement" were sufficient to show that they had "treated similarly situated executives differently and violated their fiduciary duties." *Flandreau,* 1989 WL 82001, at *3. This fell within a narrow exception to the general rule that adopting or amending plan terms are non-fiduciary settlor actions and thus could support a fiduciary duty claim. *Id.* There is no such issue here, as there are no allegations that plan terms were amended or otherwise altered in a discriminatory fashion.

In any event, even if *Flandreau* were directly on point and suggested that Plaintiff could base a fiduciary duty claim on allegations that plan terms were violated for others but applied as written to her, that case would have been overruled by the clear language of *McGath v. Auto-Body North Shore, Inc.*, 7 F.3d 665 (7th

---

[7] *Flandreau* also found that allegations the plaintiff was told there was no differences in compensation, benefits, or seniority between two positions could support a breach of fiduciary duty claim based on misrepresentation where, less than a year later, the individual in the other role retired to a better outcome than the plaintiff obtained. 1989 WL 82001, at *3. That portion of the case has no bearing on any alleged "disparate treatment" theory of recovery and is instead a straightforward fiduciary misrepresentation claim. Any such claim here fails. (*See* Parts I.B.-I.C., *supra*).

12

Cir. 1993), cited in Defendants' initial motion. (*See* Doc. 17-1 at 21-22).

> **E.     The FAC Fails to Plausibly Allege a Claim of Constructive Discharge.**

Plaintiff apparently concedes she does not (and cannot) plead a plausible claim of constructive discharge under binding authority in this Circuit. (Doc. 25 at 6 (asserting the law on constructive discharge must change or adapt)). She does not attempt to explain why such binding, mandatory authority does not apply. For this reason alone, her constructive discharge claim must be dismissed. *See Brown v. J.P. Turner & Co.*, No. 1:09-CV-2649-JEC, 2011 WL 1882522, at *5 (N.D. Ga. May 17, 2011) ("Plaintiffs' failure to respond [to arguments in a motion to dismiss] is in itself grounds for the Court to rule in favor of defendant.").

Instead, Plaintiff first attempts to bolster the threadbare allegation of the FAC by relying on assertions not contained therein, including that she was told, "Sorry, we want someone of a different race for that role" and then "[had] to continue working under the person who made the promotion decision, [who] would also be the decisionmaker for future promotions." (Doc. 25 at 6, 27). But no such facts are alleged in the FAC, and they cannot be relied upon now in deciding the sufficiency of Plaintiff's pleading. (*See generally* Doc. 13); *Donovan*, 557 F.Supp.3d at 1244. Instead, Plaintiff's claim must be evaluated based on what is alleged in the FAC alone, namely, that she was denied one promotion which she believed was based on race, subjectively felt she would not advance further, and was excluded from certain

13

meetings and work assignments by the individual promoted over her. (Doc. 13 ¶¶ 14-20).

Further, none of the nonbinding decisions cited by Plaintiff hold that one denied promotion coupled with subjective feelings about lack of advancement and exclusion from meetings or work assignments plausibly show that a reasonable person would be compelled to resign. Indeed, *Halbrook v. Reichhold Chems., Inc.*, 735 F.Supp. 121 (S.D.N.Y. 1990), one of the cases cited by Plaintiff, states precisely the opposite. *Id*. at 126 (noting "discriminatory denial of a promotion, without more, cannot amount to constructive discharge" and "reducing an employee's workload and removing her from certain circulation lists" does not rise to the level of "intolerable" working conditions that would reasonably justify resignation). Indeed, both non-binding district court cases Plaintiff urges this Court to consider found that constructive discharge was plausible in circumstances that included substantial additional evidence beyond what is alleged here. *Cf. id.* at 127-28 & n.7 (relying on evidence that the plaintiff endured a combination of a "change in responsibilities, reduction in workload, humiliation and embarrassment, and the absence of any further chance of advancement"); *Joyce v. Office of the Architect of the Capitol*, 966 F.Supp.2d. 15, 27 (D.D.C. 2013) (relying on evidence that the plaintiff's complained-of shift change had left him unable to continue as his grandchildren's primary caregiver, calling it an "unusual circumstance that makes a change in shifts

rise to a constructive discharge"). They provide no support for Plaintiff's position that the allegations actually made in the FAC are sufficient to support a plausible constructive discharge claim.

Similarly, the out-of-circuit case cited by Plaintiff fails to rebut Defendants' argument that she has not alleged Vanessa Parker's exclusion of her from meetings, which is another purported act of mistreatment forming the basis of her constructive discharge claim, was "because of" her race. (*Compare* Doc. 17-1 at 24-25 *with* Doc. 25 at 28). The only case cited, *Zierke v. Donnelley & Sons Co.*, No. 94 C 7593, 1997 WL 614390 (N.D. Ill. Sept. 24, 1997), included a finding that there was credible evidence of discriminatory comments being made by decisionmakers. *Id.* at *4-5. There are no allegations here of discriminatory comments by Parker. Accordingly, it remains that Parker's alleged mistreatment of Plaintiff cannot plausibly support a Title VII constructive discharge claim.

Because Plaintiff fails to allege that she was subjected to misconduct because of her race so intolerable that a reasonable person would be compelled to resign, her constructive discharge claims under Title VII and § 1981 must be dismissed.

## II.   CONCLUSION

For the foregoing reasons, Defendants request that their Motion to Partially Dismiss the FAC be granted.

Respectfully submitted this 4th day of April, 2025.

/s/ *Rachel P. Kaercher*
Rachel P. Kaercher
Georgia Bar No. 743007
rkaercher@littler.com
Aaron P. Spratlin
Georgia Bar No. 614659
aspratlin@littler.com

LITTLER MENDELSON, P.C.
3424 Peachtree Road N.E.
Suite 1200
Atlanta, GA  30326.1127
Telephone:    404.233.0330
Facsimile:    404.233.2361

*Attorneys for Defendants*

# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| CRISTELL WHITFIELD,<br><br>   Plaintiff,<br><br>v.<br><br>TURNER SERVICES, INC., *et al.*,<br><br>   Defendants. | CIVIL ACTION NO.<br>1:24-CV-02981-TWT-LTW |

## **CERTIFICATE OF SERVICE**

I hereby certify that, on this 4th day of April, 2025, I have electronically filed the foregoing using the Court's ECF system, which will automatically generate notice to Plaintiff's counsel at the following address:

James M. McCabe
S. Graham White
The McCabe Law Firm, LLC
3355 Lenox Road, Suite 750
Atlanta, Georgia 30326
jim@mccabe-lawfirm.com
graham@mccabe-lawfirm.com

        */s/ Rachel P. Kaercher*
        Rachel P. Kaercher
        Georgia Bar No. 743007